Larson v. Shinseki Larson. There are two issues this morning in this case. The first point the secretary concedes is whether the lower court misinterpreted the law when it held that the veteran could only file one clear and unmistakable error motion challenging a prior final regional office decision. And the second issue is if so, if that error exists, whether this court should correct that misinterpretation. Given the party's agreement on the misinterpretation of the law, I would plan to move directly to harmless error unless this court has questions about the law, jurisdiction, and the issue. The only question I have is law of the case question. I mean, even if the government concedes that it's not law of the case, is that binding on the court below when it comes back with us not having done anything? I think that's exactly the point, Judge, that without relief from this court, meaningful relief, then Mr. Larson remains barred to file a subsequent request for clear and unmistakable error. If we say it's not law of the case, we turn the law of the case doctrine on its head. I agree, again. So what explicitly do you foresee us, or are you asking us to do, to tell the court to do? I think that first, just to reverse the court's interpretation of the law and to be very explicit that the rule of law, both Hilliard, but certainly Andre and Andrews, as well as 3.105, permits veterans, and this veteran in particular, to file multiple CUE challenges to regional office decisions. I'm not sure that this court can do more. I think it's possible, but I confess I'm not sure, because I think that the court then, the lower court, has to make a determination about what the board really did in its decision that was on appeal to the court. Did the board make a final determination, as we have alleged, or did it not make a final determination, as the secretary argued below and again before this court? I think that's an application of law to fact, but if the secretary is correct that the board by law could not have made that determination, then I think in addition, this court could rule that the board's statement itself was dicta and therefore not a barrier to Mr. Larson's ability to file a subsequent CUE. Well, it's kind of tricky procedurally. Maybe the government will help us, because we don't, I mean, it's the CABC that reviews the board, and we review the CABC. Right. I agree, Judge. One could go ahead with your argument. Okay. Well, as Judge Wallach said, it is law of the case that prevents Mr. Larson, at this point, from bringing a second CUE motion. That is critical, because his first CUE motion was presented pro se. He was represented by a veteran's service organization. He did not have assistance of counsel. And he brought his CUE argument under one of two possible theories. That is, he argued that the regional office misapplied the law. He has a second alternative argument that he would like to bring, and that is that the correct facts were not before the adjudicator. And he believes that that would result in an additional award to him. And he believes that the cases that stands now would preclude him from doing so? Correct. Because the court clearly said he cannot do that. He cannot bring that. The Secretary's defense is that the lower court was correct to affirm the board, regardless of the legal misinterpretation, that his claim as brought to the CAVC was moot or hypothetical or not yet right. But it wasn't. The Secretary is mistaken about all of those. He met the case or controversy requirement because of the preclusive effect of the board decision. And he may have been mistaken. He may be wrong that the board's decision was preclusive. Nonetheless, we interpreted it that way, and he had to appeal that within 120 days to the CAVC or lose the ability to appeal that forever. And so he did. And in fact, what this court's decision in Tyroos has since clarified is that given that there was this final decision by the board, he did, in fact, have to appeal it. Tyroos also notes that he had, even if it wasn't absolutely clear that the board's decision was a definitive statement of a denial, that he had the ability. Could Larson have requested reconsideration at the board? Say, hey, a motion for clarification of the board's decision? He could have, Judge. By the time I got involved in the case, the time for that had passed. I was involved. I entered my appearance after he filed his appeal to the CAVC and after the 120-day period had run. But so, yes, he could have. And if he had filed that within 120 days of the board's decision, he could have then appealed the underlying board decision to the court. But I guess it's your position that he had the right and opportunity to correct the board's mistake using either avenue. Correct. He could have through some motion for recon or through an appeal to the Veterans Claims. Correct. Correct. And he filed his notice of appeal per se. So basically the Secretary's position is that Mr. Larson should wait until it's too late in order to appeal. But I think that the Tyroos controls, the lower court certainly could have ruled that there was no need for him to appeal the board's decision, that it was a typographical error, that it was dicta, that it was simply a general statement of the law. And had they done that, we would not be here. But instead, the lower court said, that error, whatever the board said doesn't matter because you're barred. And at this point, the law of the case controls, which is why we are here asking for the court to reverse the lower court's finding or court's interpretation. If there's no further questions. We'll take the remainder of your time to do the rebuttal. Thank you. Good morning, and may it please the court. The law of the case does not apply to any future Q motion that Mr. Larson may file because any Q challenge in the future will be a new case. Each Q claim is independent and independent for race, gender, class, or ethnicity. Even if you really believe that's true, I'm a little perplexed why we're here in any event. It seems to me, so you can tell me what I'm missing in this, is that given the set of circumstances where there's agreement that the language is problematic, it's just an argument about whether they're paranoid or you're not serious enough, why didn't you just jointly go back to the CAVC and jointly request that they make a modification or do whatever it is they need to do to clean this up? Why are we spending time on appeal arguing about this? Well, Your Honor, as to why Mr. Larson or the government didn't ask the Veterans Court for reconsideration, I don't know the answer to that. We do know from the record that Mr. Larson or the government and Mr. Larson were in agreement on. Rather, he appealed to this Court. As the Court may be aware, we did ask early on in this case for an extension of time on the briefing so that the parties could explore whether there were any settlement options here. But given that the judgment that the Veterans Court reached ultimately is correct, that it's holding on there being no clear and unmistakable error on the two theories that were asserted is unchallenged, and that ultimately we believe this issue is not yet ripe. If Mr. Larson is precluded in the future, he will have a direct appeal opportunity to challenge that. What bars the Veterans Court from saying law of the case? It would be a different case. So that law of the case applies to any future proceedings in the same case. But they already got part of it wrong. What bars them from actually saying it unless we correct this? Well, you're asking if the Veterans Court were to hear the new challenge, the new case being precluded, well nothing would bar them in advance from making a mistake, just as nothing bars them from making mistakes in any case. But then there would be review at this Court. Would that be reversible error on their part? Yes. And I think there's a key difference between that hypothetical and this case in that Mr. Larson has not actually been precluded from raising any kind of claim here. If he's had that direct appeal avenue available to him, this Court's precedent is what will apply in that future case. This Court's decision in Hilliard and Andre and other cases that make clear that a claimant may bring more than one Q challenge to a regional office decision. Can you understand, though, why our confidence is a little bit shaken right now? Now we have this case in front of us. If we were to affirm this decision, who knows how that would be That's understandable, Your Honor, certainly. But two thoughts about that. First, this Court has made clear, even in the Veterans Court context, that it reviews judgments, not opinions. So that there could be any number of statements that are dicta that appear in opinions that the Court finds incorrect, but it's not ordinarily the role of the Court to correct all of those statements. Where it's here, the underlying judgment, it's undisputed that it's correct. And again, although I understand Mr. Larson's concerns, he has the entire direct appeal route available for correction of any future errors. Let me ask it a little differently. What would be the bad consequence if we actually reversed here to clarify that what the Veterans Court said was wrong? Well, the consequence is that this Court would be charting new territory in reversing in a case where there's no dispute that the judgment was correct. This Court ultimately reverses or affirms judgment. And now if the Court were to, I hesitate to even offer this up because certainly we're not in the business of encouraging the Court to make advisory opinions, but the Court can affirm, it could do a Rule 36, it could write an opinion that says whatever the Court likes. But ultimately, affirmance is what the proper remedy is here, where there's no dispute as to the correctness of the judgment, that there simply was no clear and unmistakable error on the two theories that the Board adjudicated. So to the extent that the Court might feel compelled to say in connection with any affirmance that there was a mistake here, but nonetheless that we are affirming the judgment. The whole point of this litigation has been to correct a mistake in the Board decision, and the Veterans Court refused to correct that mistake based on an inappropriate understanding of the law. Well, we strongly disagree that there's any mistake here in the Board's decision. Now, we do agree that in adjudicating the claim of mistake in the Board's decision, the Veterans Court applied incorrect reasoning, but we don't agree and accept the proposition that the Board committed any error here. The Board clearly adjudicated the two Q theories raised before it, it identified them, it applied the law to the facts. But there was no correct facts theory of the Q claim in front of the Board, right? And yet, for some reason, whatever reason, the Board seemed to make a finding on that. Well, we disagree that the Board made a finding. We think what the Board did was, at the end of its opinion, restate the Q standard in its conclusion. If you read the body of the Board's decision, it identifies the two theories, applies the asserted legal errors to the facts of the case. Yeah, but that's not the way the CAVC saw it. Well, the CAVC didn't specifically address this question of whether... It depends a little bit on how you define what the asserted error by the Board is. We understand, Mr. Larson, to be asserting that the Board somehow adjudicated Q claims that were not pending before it by incorporating into its summary statement this correct facts language, by spelling out the entire Q standard in its conclusion. And in our view, as a matter of law, this Court's decisions that make clear that each Q claim is independent for race judicata purposes, that Q theories have to be asserted with specificity, that against the background of all that, it's clear that the Board... Do you appreciate that this is a little different, perhaps, for us than our regular, normal, run-of-the-mill cases? Because in this circumstances, not only do we have a veteran who, as you suggest, well, at the end of the day, even if this comes up, we'll be able to cure it however many years from now. So we're obviously getting him into a situation that might be problematic, even if he wins at the end of the day, but that also we have a system where we know we've got thousands or hundreds of thousands of cases in the pipeline. So it's particularly important, is it not, for us, for the CABC, for the Board, to have a body of case law that's clear, because people are adjudicating and dealing with these cases each and every day, and they're affecting other claims that are pending. So doesn't that make it even more compelling that we ought to get it right and clean it up? Well, we don't disagree with any of Your Honor's points, but I do respectfully disagree with the conclusion that it would then require this Court to do something to address this area. This Court's precedent is what governs Board proceedings and future Veterans Court proceedings, and this Court's precedent is quite clear. Hilliard, Andre, that Mr. Larson may raise a future Q claim. So while we're not unsympathetic to the fact that there was an error here and that Mr. Larson does have concerns, we think the underlying principles remain quite important, particularly being that where, here, the Veterans Court reached a correct judgment, then affirmance is the proper remedy, not a reversal or a remand. So instead of a vacation or a reversal, how about if we just require the VA to publish a transcript of your oral argument in all its regional offices? I'm not sure exactly what enforcement power that would fall under. I think they'd rather have a reversal. I would point out that the VA took the position before the Veterans Court that Mr. Larson remained free to file future challenges. We're taking that position here, and so I realize that Mr. Larson is understandably nervous, but ultimately the question that he's bringing before the Court is all about what might happen in the future, and we need to wait and see what does happen. Thank you. Just a few points. First, there is a dispute about whether the judgment, as well as the decision, is correct. The lower court should not have affirmed the board. It should have either modified the board's decision or remanded it for clarification if the court couldn't assess what was going on in that decision. The issue on appeal, should Mr. Larson start a CUE claim now with this decision from the lower court, will not be on the merits of his CUE. He will be denied. We presume that the regional office will follow the lower court's order. He will be denied, and the only issue on appeal is whether law of the case applies. It will not be on the merits of his CUE claim, and he does not meet, the Secretary has not suggested that he does meet, any exception to the law of the case doctrine. Affirming the CAVC on alternate grounds, which is basically what the Secretary is asking, provides no meaningful relief to Mr. Larson. Again, I ask that the court reverse the CAVC's holding. Ms. Cook, can you just remind me again what was the nature of Mr. Larson's appeal to the Veterans Court? Was it that the underlying finding on the CUE claim or the two real CUE claims was wrongly cited, or was it purely just about these modified board decisions? It was the latter, Judge. I argued that the board's finding that the correct facts were not before the adjudicator was either beyond its jurisdiction, and therefore the board erred in going beyond its jurisdiction, or that if it wasn't beyond its jurisdiction, that he should have been provided notice and an opportunity to be heard on that issue and that the board provided inadequate reasons and bases. So the judgment is just narrowly tailored to that? The lower court's judgment is not exactly, Judge, because it contains this law of the case issue, which prevents him from pursuing this matter on an alternate theory. And the board ruled that the rating was correct, that the rating assigned in 1969 was correct. Well, a new CUE challenge is going to be challenging the propriety of that rating just under a different theory. And so the judgment affirming the board's finding that the rating was correct is still a barrier to him. Ms. Coates, just out of curiosity, if you can say, why no motion for reconsideration? At the CAVC? Well, in all honesty, Judge, I mean, it was obviously a judgment call, but given the general counsel's reluctance to join in a motion to modify the board's decision, I had hopes that a new set of eyes would help. Thank you.